**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CORNELL HERBERT,

        Plaintiff,

    v.

ARCHITECT OF THE CAPITOL,

        Defendant.

Civil Action No. 09-01719 (CKK)

**MEMORANDUM OPINION**
(March 20, 2012)

Plaintiff Cornell Herbert ("Herbert"), an African American, brings this action against his current employer, the Architect of the Capitol (the "AOC"), claiming that he was discriminated and retaliated against in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Congressional Accountability Act of 1995 (the "CAA"). In his [33] Second Amended Complaint, Herbert asserts a total of five claims against the AOC. In Count I, Herbert claims that he was discriminated against when the AOC did not select him to serve as a full-time "point man" during a project in 2008. In Count II, Herbert claims that he was retaliated against when the AOC did not select him to serve as a full-time "point man" during a project in 2008. In Count III, Herbert claims that he has been continuously subjected to a discriminatory and retaliatory hostile work environment. In Count IV, Herbert claims that he was discriminated against when the AOC issued him a letter of reprimand in connection with a verbal altercation between him and a co-worker on May 1, 2010. In Count V, Herbert claims that he was retaliated against when the AOC issued him a letter of reprimand in connection with a verbal altercation between him and a co-worker on May 1, 2010.

Currently before the Court is the AOC's [36] Motion for Summary Judgment, which

Herbert has opposed.  Upon careful consideration of the parties' submissions, the relevant

authorities, and the record as a whole,[1] the Motion shall be **GRANTED-IN-PART** and

**DENIED-IN-PART**.  Specifically, the Court shall **ENTER** judgment in the AOC's favor on

Counts I, IV, and V of the Second Amended Complaint because no reasonable fact-finder could

conclude that the employment actions challenged through these claims were materially adverse.

The AOC's Motion for Summary Judgment shall otherwise be **DENIED** because the AOC has

failed to establish an absence of a genuine dispute of material fact and its entitlement to

judgment as a matter of law.  Accordingly, only Count II, through which Herbert claims that he

was retaliated against when the AOC did not select him to serve as a full-time "point man"

during a project in 2008, and Count III, through which Herbert claims that he has been

continuously subjected to a discriminatory and retaliatory hostile work environment, survive the

Court's decision today.

---

[1]  While the Court renders its decision today on the record as a whole, its consideration has focused on the following documents, listed in chronological order of their filing: Def.'s Mem. in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem."), ECF No. [36]; Def.'s Stmt. of Material Facts as to which There Is No Genuine Issue ("Def.'s Stmt."), ECF No. [36]; Pl.'s Opp'n to Mot. for Summ. J. ("Pl.'s Opp'n"), ECF No. [43]; Pl.'s Resp. to Def.'s Stmt. of Material Facts as to which There Is No Genuine Dispute & Pl.'s Stmt. of Material Facts which Demonstrate a Genuine Dispute Over Material Facts ("Pl.'s Resp. Stmt."), ECF No. [43-1]; Def.'s Reply Mem. in Supp. of Def.'s Mem. for Summ. J. ("Def.'s Reply"), ECF No. [46]; Def.'s Reply to Pl.'s Resp. to Def.'s Stmt. of Material Facts Not in Genuine Dispute & Def.'s Resp. to Pl.'s Stmt. of Facts which Demonstrate a Genuine Dispute Over Material Facts ("Def.'s Reply Stmt."), ECF No. [46-7]; Def.'s Errata, ECF No. [48].  In an exercise of its discretion, the Court finds that holding oral argument on the AOC's Motion for Summary Judgment would not be of assistance in rendering a decision.  *See* LCvR 7(f).

# I. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and [that it] . . . is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The mere existence of some factual dispute is insufficient on its own to bar summary judgment; the dispute must pertain to a "material" fact. *Id.* Accordingly, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nor may summary judgment be avoided based on just any disagreement as to the relevant facts; the dispute must be "genuine," meaning that there must be sufficient admissible evidence for a reasonable trier of fact to find for the non-movant. *Id.*

In order to establish that a fact is or cannot be genuinely disputed, a party must (a) cite to specific parts of the record—including deposition testimony, documentary evidence, affidavits or declarations, or other competent evidence—in support of its position, or (b) demonstrate that the materials relied upon by the opposing party do not actually establish the absence or presence of a genuine dispute. FED. R. CIV. P. 56(c)(1). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute sufficient to survive summary judgment. *Ass'n of Flight Attendants-CWA, AFL-CIO v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009). Moreover, where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact," the district court may "consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e).

When faced with a motion for summary judgment, the district court may not make credibility determinations or weigh the evidence; instead, the evidence must be analyzed in the light most favorable to the non-movant, with all justifiable inferences drawn in his, her, or its

favor. *Liberty Lobby*, 477 U.S. at 255. If material facts are genuinely in dispute, or undisputed facts are susceptible to divergent yet justifiable inferences, summary judgment is inappropriate. *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009). In the end, the district court's task is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-52. In this regard, the non-movant must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); "[i]f the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted," *Liberty Lobby*, 477 U.S. at 249-50 (internal citations omitted).

In recognition of the difficulty in uncovering clear evidence of discriminatory or retaliatory intent, the district court should approach summary judgment in an action for employment discrimination or retaliation with "special caution." *Aka v. Wash. Hosp. Ctr.*, 116 F.3d 876, 879-80 (D.C. Cir. 1997), *vacated on other grounds*, 156 F.3d 1284 (D.C. Cir. 1998) (*en banc*). Even so, the plaintiff is not relieved of his burden to support his allegations with competent evidence. *Brown v. Mills*, 674 F. Supp. 2d 182, 188 (D.D.C. 2009). As in any context, if the plaintiff will bear the burden of proof on a dispositive issue at trial, then at the summary judgment stage he bears the burden of production to designate specific facts showing that there is a genuine dispute requiring trial. *Ricci v. DeStefano*, 557 U.S. 557, 129 S. Ct. 2658, 2677 (2009). Absent this burden, the plaintiff could effectively defeat the "central purpose" of the summary judgment device—namely, "to weed out those cases insufficiently meritorious to warrant . . . trial"—simply by way of offering conclusory allegations, speculation, and argument. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

## II. DISCUSSION

**A.      Counts I and II:  The Materially Adverse Action Requirement and Herbert's Non-Selection as a Full-Time "Point Man" in 2008**

Every two years, in the month following the congressional elections, the AOC is tasked with organizing what it refers to as the "congressional moves." Def.'s Stmt. ¶¶ 9-10; Pl.'s Resp. Stmt. ¶¶ 9-10.  In a three-week period, the AOC must move 180 to 210 members of Congress, presenting a major project for the Paint Shop in which Herbert is employed.  Def.'s Stmt. ¶¶ 9-10; Pl.'s Resp. Stmt. ¶¶ 9-10.  In order to meet the time constraints imposed on its work, the Paint Shop engages 40 to 70 temporary painters and paints around the clock.  Def.'s Stmt. ¶ 11; Pl.'s Resp. Stmt. ¶ 11.  Temporary painters are organized into teams and an experienced painter from the Paint Shop's permanent staff is assigned to act as a "point man" for each team.  Def.'s Stmt. ¶ 12; Pl.'s Resp. Stmt. ¶ 12.  In Counts I and II, Herbert claims that he was discriminated and retaliated against when the AOC did not select him to serve as a full-time point man during the 2008 congressional moves.  Second Am. Compl. ("Compl."), ECF No. [33], ¶¶ 41, 45. Count I sounds in discrimination and Count II sounds in retaliation.

In order to present a viable claim for discrimination or retaliation under Title VII or the CAA,[2] a plaintiff must show that he suffered a materially adverse employment action.  *Baird v. Gotbaum*, 662 F.3d 1246, 1248-49 (D.C. Cir. 2011).  With respect to Counts I and II, the AOC

---

[2]  Claims brought under the CAA are analyzed under Title VII's familiar framework and standards.  *See, e.g.*, *Moore v. Office of the Architect of the Capitol*, __ F. Supp. 2d __, 2011 WL 6225197, at *2 n.1 (D.D.C. Dec. 14, 2011); *Moran v. U.S. Capitol Police Bd.*, __ F. Supp. 2d __, 2011 WL 5101372, at *6 (D.D.C. Oct. 27, 2011); *Hyson v. Architect of Capitol*, 802 F. Supp. 2d 84, 97 (D.D.C. 2011); *Timmons v. U.S. Capitol Police Bd.*, 407 F. Supp. 2d 8, 11 (D.D.C. 2006); *Trawick v. Hantman*, 151 F. Supp. 2d 54, 62-63 (D.D.C. 2001), *aff'd*, 2002 WL 449777 (D.C. Cir. Feb. 21, 2002).   Although the CAA includes its own anti-retaliation provision, *see* 2 U.S.C. § 1317(a), courts routinely rely upon Title VII case law when evaluating whether a challenged employment action is sufficiently adverse under the CAA's anti-retaliation provision.  *See, e.g.*, *Clark v. Hantman*, 2003 WL 21018860, at *1 (D.C. Cir. Apr. 29, 2003) (*per curiam*); *Vanover v. Architect of Capitol*, 2002 WL 31027573, at *1 (D.C. Cir. Sept. 11, 2002) (*per curiam*).

contends that Herbert cannot show that he was subjected to a materially adverse employment action.  For the reasons set forth below, the Court agrees with respect to Count I, but reaches a different conclusion with respect to Count II.

Unsurprisingly, Herbert and the AOC have different opinions about what it means to serve as a point man.  Whereas the AOC emphasizes that serving as a point man is a temporary assignment that neither affects a painter's salary or permanent duties, Herbert contends that serving as a point man comes with increased responsibilities and greater earning and promotion potential.  *See* Def.'s Mem. at 6, 17; Pl.'s Opp'n at 15-16.  Despite these competing visions, the nature of a point man's responsibilities is not in dispute: during the congressional move period, a point man is assigned to each team and is tasked with ensuring that the team paints the correct suites and uses proper paints and techniques.  Def.'s Stmt. ¶ 13; Pl.'s Resp. Stmt. ¶¶ 13, 37; Def.'s Reply Stmt. ¶ 37.  Furthermore, there is no genuine dispute that serving as a point man is a temporary assignment that neither affects a person's salary or permanent responsibilities outside of the congressional move period nor involves an official entry in the painter's official personnel records reflecting whether he or she was selected to serve as a point man.  Def.'s Stmt. ¶ 20; Pl.'s Resp. Stmt. ¶ 20; Decl. of Edward Williams, Sr. ("Williams Decl."), ECF No. [36-1], ¶ 11.

With that much settled, the parties' disagreement focuses on two points.  First, Herbert argues that serving as a full-time point man comes with greater earning potential.  *See* Pl.'s Opp'n at 15.  In this regard, it is undisputed that a point man is eligible for an enhanced monetary bonus.  Def.'s Stmt. ¶ 21; Pl.'s Resp. Stmt. ¶ 21.  However, it is equally undisputed that Herbert was used as a stand-in point man during the 2008 congressional moves, and, for that reason, received the same enhanced bonus for that year as did any other point man.  Def.'s Stmt.

¶¶ 22-23; Pl.'s Resp. Stmt. ¶¶ 22-23.  Accordingly, Herbert has failed to establish a genuine

dispute that his non-selection as a full-time point man in 2008 had any effect on his earning

potential or resulted in any direct economic consequences.[3]  Second, relying on a single

paragraph from a declaration prepared by the supervisor of the Paint Shop, Edward Williams, Sr.

("Williams"), Herbert contends that "[a]cting as a point man entitles employees to better

performance appraisals."  Pl.'s Resp. Stmt. ¶ 20 (citing Williams Decl. ¶ 11).  However, the cited

paragraph simply does not support Herbert's contention.  In fact, in the cited paragraph,

Williams declares that "[t]he *only* possible difference between being assigned as a point man or

not is that point men . . . may be given a bonus award that is higher than the bonus award for

[other] permanent employees."  Williams Decl. ¶ 11 (emphasis added).  Accordingly, Herbert

has failed to establish a genuine dispute that acting as a point man entitles employees to better

performance appraisals.[4]

---

[3]  Herbert alleges that he did not receive an enhanced bonus during the 2010 congressional moves.  *See* Pl.'s Opp'n at 10.  This allegation, even if true, is immaterial because Counts I and II are confined to Herbert's non-selection as a point man during the 2008 congressional moves. *See* Compl. ¶¶ 41, 45.

[4]  In his responsive statement of material facts, Herbert cites to a single paragraph in Williams' declaration in support of his contention that "[a]cting as a point man entitles employees to better performance appraisals."  Pl.'s Resp. Stmt. ¶ 20 (citing Williams Decl. ¶ 11).  For reasons already discussed, the Court finds that the cited paragraph does not support this contention. Nonetheless, Herbert has submitted a declaration with his opposition, which he cites in support of other allegations in his responsive statement of material facts.  The Court is aware that, in his declaration, Herbert alleges that "[a]cting as a point man during Congressional moves entitles employees to better performance appraisals."  Decl. of Cornell Herbert ("Herbert Decl."), ECF No. [43-5], ¶ 3.  The Court declines to consider this allegation because Herbert failed to cite it as support for his contention that "[a]cting as a point man entitles employees to better performance appraisals."  Pl.'s Resp. Stmt. ¶ 20 (citing Williams Decl. ¶ 11).  *See* FED. R. CIV. P. 56(c)(3) ("The Court need consider only the cited materials.");  Scheduling & Procedures Order (Feb. 24, 2011) ("Scheduling Order"), ECF No. [34], ¶ 6(f) ("The parties must furnish **precise citations** to the portions of the record on which they rely; the Court need not consider materials not specifically identified.") (bold in original).  By doing so, Herbert failed to put the AOC on notice that he was relying on the allegation in his declaration and deprived the AOC of an opportunity to render a meaningful response.  However, even assuming, for the sake of

The question that remains is whether, on this record, a reasonable fact-finder could conclude that Herbert suffered a materially adverse employment action when he was not selected to serve as a full-time point man during the 2008 congressional moves. The standard for material adversity differs depending on whether the claim is one for discrimination or retaliation, and the Court divides its analysis accordingly.

### 1.   Count I: Non-Selection as a Full-Time "Point Man" in 2008 (Discrimination)

In the discrimination context, "[a]n employee must experience materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Douglas v. Donovan*, 559 F.3d 549, 552 (D.C. Cir. 2009) (quotation marks and notations omitted). Therefore, to support a discrimination claim, an employment action "must . . . be a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Baird*, 662 F.3d at 1248 (quotation marks omitted). Consistent with this description, "[a] tangible employment action in most cases inflicts direct economic harm." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (emphasis omitted).

---

argument, that the Court were inclined to consider the allegation, the result would be the same. The allegation is the sort of conclusory statement, unaccompanied by supporting facts or a basis for concluding that it rests on personal knowledge, that should be disregarded on a motion for summary judgment. *See* FED. R. CIV. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *Ass'n of Flight Attendants-CWA*, 564 F.3d at 466 (providing that conclusory assertions without any factual basis cannot create a genuine dispute); *Greene*, 164 F.3d at 675 (refusing to consider allegation that employer hired applicant with less experience because affiant provided no "supporting facts" for the allegation).

Applying these principles to Herbert's non-selection as a full-time point man for the 2008 congressional moves is an easy task.  On this record, no reasonable fact-finder could conclude that Herbert's non-selection constituted a significant change in his employment status.  First, Herbert's non-selection lacks the classic indicator of a tangible employment action, direct economic harm, because Herbert in fact received the same salary and bonus despite his non-selection as a full-time point man simply by serving as a stand-in point man.  In short, from a direct economic perspective, Herbert was no better or worse off as a result of his non-selection. Second, any change in responsibilities that would have followed from Herbert's selection as a full-time point man could not be characterized as significant.  During the congressional move period, point men are temporarily assigned to a team and are tasked with ensuring that the team paints the correct suites and uses proper paints and techniques.  Despite Herbert's apparent belief to the contrary, these temporary responsibilities are too minor to be characterized as amounting to "substantially greater supervisory authority." *Stewart v. Ashcroft*, 352 F.3d 422, 427 (D.C. Cir. 2003); *compare Maramark v. Spellings*, 2007 WL 2935411, at *1 (D.C. Cir. Sept. 20, 2007) (finding that any harm from the failure to grant employee a temporary detail was "too speculative" to constitute a tangible employment action), *and Taylor v. Fed. Deposit Ins. Corp.*, 132 F.3d 753, 764-54 (D.C. Cir. 1997) (concluding that the repeated failure to designate plaintiffs as acting section chief was too "minor" to constitute actionable adverse employment action), *with Wiley v. Glassman*, 511 F.3d 151, 157-58 (D.C. Cir. 2007) (concluding that the failure to rotate plaintiff into an acting manager position could constitute a materially adverse employment action where the decision-maker testified that it was the most important function in the office and admitted that it affected future promotion opportunities), *cert. denied*, 555 U.S. 826 (2008).  Moreover, Herbert in fact exercised these minor responsibilities from time to time

in his capacity as a stand-in point man, reducing the import of his non-selection as a full-time

point man.  Third, "[f]or employment actions that do not obviously result in a significant change

in employment status . . . an employee must go the further step of demonstrating how the

decision nonetheless caused an objectively tangible harm," *Douglas*, 559 F.3d at 553, and

Herbert has fallen woefully short of satisfying this burden.  As previously discussed, although

Herbert claims that his non-selection affected his future promotion potential, he has failed to

support that claim with competent evidence.  Meanwhile, the record is clear that serving as a

point man neither affects a person's permanent responsibilities outside of the congressional move

period nor involves an official entry in the painter's official personnel records reflecting whether

he or she was selected to serve as a point man.

On this record, no reasonable fact-finder could conclude that Herbert's non-selection as a

full-time point man for the 2008 congressional moves constituted a materially adverse

employment action sufficient to support a claim for discrimination under Title VII or the CAA.

For this reason, the Court shall **GRANT** the AOC's [36] Motion for Summary Judgment insofar

as it seeks judgment on Count I of the Second Amended Complaint and **ENTER** judgment in the

AOC's favor on that claim.

### 2.     Count II: Non-Selection as a Full-Time "Point Man" in 2008 (Retaliation)

In the retaliation context, the "adverse employment action" concept has a "broader

sweep."  *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 n.4 (D.C. Cir. 2008).  In order to present a

viable claim for retaliation, a plaintiff must show that a reasonable employee would have found

the challenged employment action "materially adverse," meaning that the action "well might

have dissuaded a reasonable worker from making or supporting a charge of discrimination."

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quotation marks omitted).

While this concept "cover[s] a broad range of employer conduct," *Thompson v. N. Am. Stainless,*

*LP*, __ U.S. __, 131 S. Ct. 863, 866-68 (2011), it nonetheless remains the case that an employee

is "protect[ed] . . . not from all retaliation, but from retaliation that produces an injury or harm,"

*Burlington N.*, 548 U.S. at 67.

      In notable contrast to the discrimination context, an employment action may still be

materially adverse in the retaliation context even if it is unaccompanied by an objectively

tangible consequence such as a decrease in pay or benefits. *Pardo-Kronemann v. Donovan*, 601

F.3d 599, 607 (D.C. Cir. 2010).  Because "the significance of any given act of retaliation will

often depend on the particular circumstances," *Burlington N.*, 548 U.S. at 69, the question of

what constitutes a materially adverse employment action "is simply not reducible to a

comprehensive set of clear rules," *Thompson*, 131 S. Ct. at 868.  In the end, the task for the fact-

finder is to compare the position that the plaintiff in fact inhabited and the position that he would

have inhabited absent the allegedly retaliatory action and determine whether the action "well

might have dissuaded a reasonable worker from making or supporting a charge of

discrimination." *Burlington N.*, 548 U.S. at 68 (quotation marks omitted).

      Other courts have recognized that whether the denial of a temporary assignment with

some supervisory responsibilities rises to the level of a materially adverse employment action

sufficient to support a retaliation claim may present a "close" question. *Hill v. Kempthorne*, 577

F. Supp. 2d 58, 67-68 (D.D.C. 2008); *but see Brookens v. Solis*, 616 F. Supp. 2d 81, 91-92

(D.D.C. 2009) (concluding that the denial of a temporary detail is not a materially adverse

employment action absent a showing of some injury), *aff'd*, 2009 WL 5125192 (D.C. Cir. Mar.

31, 2010), *cert. denied*, __ U.S. __, 131 S. Ct. 225 (2010).  Here, the record suggests that serving

as a full-time point man during the 2008 congressional moves could have permitted Herbert to

gain additional training in an informal supervisory role. Mindful that "[w]hether a particular adverse action satisfies the materiality threshold is generally a jury question," this Court concludes that "viewing the evidence in the light most favorable to [Herbert], a reasonable jury could find the action materially adverse." *Rattigan v. Holder*, 643 F.3d 976, 986 (D.C. Cir. 2011), *vacated on other grounds by* 2011 WL 4101538 (D.C. Cir. Sept. 13, 2011). Accordingly, the Court shall **DENY** the AOC's [36] Motion for Summary Judgment insofar as it seeks judgment on Count II on the basis that Herbert cannot meet his burden of showing that he was subjected to a materially adverse employment action.

> **B.      Count II: The Ultimate Fact of Retaliation and Herbert's Non-Selection as a Full-Time "Point Man" in 2008**

In the alternative to its material adversity argument, the AOC contends that it is entitled to judgment on Count II because no reasonable fact-finder could conclude that the AOC's qualifications-based reason for Herbert's non-selection as a full-time point man for the 2008 congressional moves was not the actual reason and that the AOC instead intentionally retaliated against Herbert.[5] In this Circuit, once an employer has proffered a legitimate, non-retaliatory reason for a challenged employment action, the "central question" becomes whether "the employee [has] produced sufficient evidence for a reasonable jury to find that the employer's asserted [non-retaliatory] reason was not the actual reason and that the employer intentionally [retaliated] against the employee." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008); *see also Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009) (observing that "these principles apply equally to retaliation claims."). Generally speaking, a claim should proceed to the jury if the plaintiff is able to point to evidence from which a jury could reasonably

---

[5] The AOC tenders the same argument in connection with Herbert's claim for discrimination (Count I). Although the same logic would apply to that claim, the Court concludes that judgment must be entered in the AOC's favor on Count I for other reasons. *See supra* Part II.A.1.

find that the employer's stated reasons for the challenged employment action were pretextual. *Calhoun v. Johnson*, 632 F.3d 1259, 1261 (D.C. Cir. 2011); *see also Pardo-Kronemann*, 601 F.3d at 604 (providing that evidence of pretext is generally, but not always, sufficient to survive summary judgment). The plaintiff cannot rely on his view that the employer's action was "imprudent or unfair; an employer may make an employment decision for a good reason, a bad reason, or no reason at all so long as" if the decision is not made in reprisal for the plaintiff's protected activity. *Santa Cruz v. Snow*, 402 F. Supp. 2d 113, 125 (D.D.C. 2005) (quotation marks omitted).

In this case, the AOC argues that Count II must be dismissed because "the professional painting experience of the painters chosen to act as point men in 2008 so far exceeded [Herbert's] experience that no reasonable juror could conclude that the decision not to choose him was motivated by . . . a desire to retaliate against him." Def.'s Reply at 4. There are at least three reasons why this argument is unavailing. The Court addresses each in turn.

First, the threshold problem with the AOC's argument, and the reason that it fails at the outset, is that it is not clear from the record what qualifications the decision-makers actually considered to be controlling for purposes of choosing point men for the 2008 congressional moves. The AOC's argument hinges on its contention that "painting experience" was the "principal criterion used during the selection process," *id.* at 2, but the record does not unambiguously support such a limited view. Indeed, at other times, the AOC concedes that the selection criteria included the candidates' overall performance and their perceived ability to lead a group of temporary painters. Def.'s Mem. at 5. Nonetheless, the AOC has made no attempt to describe what weight the decision-makers allocated to each of these criteria or to articulate how Herbert compared to the other candidates with respect to his overall performance and perceived

ability to lead a group of temporary painters. This failure is particularly troublesome in this case because the selection process, as described by the AOC's own managers, appears to turn in part on subjective considerations. *See Hamilton v. Geithner*, 666 F.3d 1344, 1352 (D.C. Cir. 2012) (noting that the subjectivity of the selection process is a relevant consideration in evaluating a qualifications-based reason for an employment action).

Second, contrary to the AOC's position, a reasonable fact-finder could conclude that seniority, and not professional painting experience, was an important consideration in the selection process. Charles Bryan ("Bryan"), the Assistant Supervisor for the Paint Shop, testified at his first deposition that point man candidates are generally reviewed in terms of "seniority, how many years experience do [they have], that type of thing." Dep. of Charles David Bryan, ECF No. [43-2], at 22.[6] Although the AOC argues that "Bryan's testimony is subject to the interpretation that the term seniority is defined by years of experience," Def.'s Reply at 2, implicit in this argument is a concession that the testimony is subject to the opposite construction, and that is a matter for the jury to decide. If the jury were to conclude that seniority was a relevant criterion, then it might find it relevant that Herbert had more seniority than a number of the individuals who were ultimately selected to serve as point men during the 2008 congressional moves. *See* Def.'s Reply Stmt. ¶ 39 (citing Decl. of Paulette Dixon-Ellis, ECF No. [46-2], ¶ 3).

Third, in his responsive statement of material facts, Herbert alleges that he has approximately three decades of painting experience. Pl.'s Resp. Stmt. ¶ 19. In its reply statement of material facts, the AOC claims that this allegation is "patently untrue" and asserts

---

[6] At the very least, this testimony stands in some tension with Bryan's testimony at his second deposition that candidates for point man were not evaluated in terms of seniority. Dep. of Charles D. Bryan, ECF No. [43-3], at 30.

14

that "the Court need not accept such a facially untrue statement," but the AOC cites to no evidence in support of this assertion. Def.'s Reply Stmt. ¶ 19. Instead, the AOC attempts to incorporate an unspecified universe of factual allegations set forth in its reply memorandum of points and authorities. *See id.* (claiming that the reply memorandum "summarizes the facts on this issue"). This approach plainly contravenes the terms of this Court's Scheduling and Procedures Order, which states in no uncertain terms that "[t]he responding party must include any information relevant to its response in its correspondingly numbered paragraph, with specific citations to the record." Scheduling Order ¶ 6(e). As this Court has held in the past, incorporating factual and legal argument in memoranda is patently unacceptable. *See Glass v. LaHood*, 786 F. Supp. 2d 189, 198-99 (D.D.C. 2011) (faulting party for incorporating factual and legal argument from a memorandum into a statement of material facts), *aff'd*, 2011 WL 6759550 (D.C. Cir. Dec. 8, 2011). Based on the AOC's non-compliance, the Court treats Herbert's factual allegation as conceded. On this record, a reasonable fact-finder could conclude that Herbert had far greater painting experience than the AOC is now willing to give him credit for in the context of this litigation.

For the foregoing reasons, the Court cannot conclude that the AOC has met its burden of showing that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law on Count II. Accordingly, the Court shall **DENY** the AOC's [36] Motion for Summary Judgment insofar as it seeks judgment on Count II on the basis that no reasonable fact-finder could conclude that the AOC's qualifications-based reason for Herbert's non-selection as a full-time point man for the 2008 congressional moves was not the actual reason and that the AOC instead intentionally retaliated against Herbert.

### C.     Count III: Discriminatory and Retaliatory Hostile Work Environment

In Count III, Herbert claims that he has continuously been subjected to a discriminatory

and retaliatory hostile work environment. *See* Compl. ¶¶ 49-50.  A workplace becomes "hostile"

for purposes of Title VII only if the allegedly offensive conduct "permeate[s] [the workplace]

with 'discriminatory [or retaliatory] intimidation, ridicule, and insult,' that is 'sufficiently severe

or pervasive to alter the conditions of the victim's employment and create an abusive working

environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993) (quoting *Meritor Sav.*

*Bank, FSB v. Vinson*, 477 U.S. 57, 65 & 67 (1986)).  This standard, occasionally referred to as

the *Meritor-Harris* standard, has an objective component and a subjective component: the

environment must be one that a reasonable person in the plaintiff's position would find hostile or

abusive, and the plaintiff must actually perceive the environment to be hostile or abusive.  *Id.*  In

determining whether a hostile work environment exists, the fact-finder must take into account

"the totality of the circumstances, including the frequency of the discriminatory conduct, its

severity, its offensiveness, and whether it interferes with an employee's work performance."

*Baloch*, 550 F.3d at 1201 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)).

In this case, the AOC argues that it is entitled to judgment on Count III because Herbert is unable

to meet the rigors of the *Meritor-Harris* standard.  For several reasons, the Court finds this

argument unpersuasive.

First, and most importantly, the Court agrees with Herbert that the argument that the

AOC provides in connection with this claim is utterly "conclusory."  Pl.'s Opp'n at 30.  In its

opening memorandum, the AOC simply states, without any further elaboration, that "[a]s

explained in the [b]ackground section, [Herbert's] allegations regarding an alleged hostile work

environment, [sic] are actually limited in nature to the sorts of disagreements that are not

uncommon in the workplace." Def.'s Mem. at 19. The AOC tenders no factual or legal analysis

in support of this broad assertion. Most notably, it makes no attempt to tether its broad claim to

the specific allegations underlying Herbert's hostile work environment claim. Even taking into

account the characterization of certain incidents in the background section of the AOC's opening

memorandum, the AOC has simply failed to support its argument with any meaningful measure

of factual or legal argument. Courts need not consider cursory arguments of this kind, and the

Court declines to do so here. *Cf. Hutchins v. District of Columbia*, 188 F.3d 531, 539 n.3 (D.C.

Cir. 1999) (*en banc*).

Second, despite the conclusory nature of the AOC's argument, it is clear that the AOC

relies on a premise that the Court cannot accept at this time and on this record. Specifically, the

AOC assumes that, in support of his hostile work environment claim, Herbert is precluded from

relying on component acts that either (1) predate the execution of a settlement agreement

between Herbert and the AOC or (2) were addressed as discrete claims in a prior civil action that

Herbert brought against the AOC in this Court. *See* Def.'s Mem. at 7.

With respect to the settlement agreement, it is undisputed that Herbert and the AOC

entered into a settlement agreement on July 6, 2006, well before the commencement of this

action. Def.'s Stmt. ¶ 4; Pl.'s Resp. Stmt. ¶ 4. In connection with that agreement, Herbert

executed a release of claims, agreeing to "waive[], release[], and convent[] not to sue or

prosecute further the AOC, or its agents and attorneys, regarding any matters that he alleged or

could have alleged in [certain mediation proceedings] or for which he would have a claim under

any applicable federal, state, county, local, or common law, including, but not limited, the

CAA." In arguing that it is entitled to judgment in its favor on Herbert's hostile work

environment claim, the AOC assumes that Herbert is precluded from relying on component acts

that predate the execution of the settlement agreement. *See* Def.'s Mem. at 7. But the AOC

inexplicably offers no legal argument—none—in support of this assumption. Meanwhile, the

Court's independent review of the relevant case law suggests that, at the very least, it may be a

mistake to apply a *per se* rule "preclud[ing] consideration of pre-settlement conduct of

discrimination in a later case where the status of a current practice is at issue." *Bradley v.*

*Widall*, 232 F.3d 626, 633-34 (8th Cir. 2000), *abrogated on other grounds by Torgeson v. City of*

*Rochester*, 643 F.3d 1031 (8th Cir. 2011). For instance, it is hornbook law that an unconditional

release generally covers only those claims in existence at the time of the release, and not future

claims. Therefore, one potentially relevant question relating to Herbert's ability to rely on

incidents predating his execution of the settlement agreement is this: when did his hostile work

environment claim accrue? Ultimately, the Court need not resolve these complex issues because,

as before, the AOC has failed to tender any meaningful argument in support of its position. The

Court declines to reach the merits in the absence of adequate briefing from the parties.[7]

     With respect to the component acts that were addressed in a prior civil action, it is true

that Herbert brought a separate action against the AOC in this Court, which was litigated through

the summary judgment stage. *See Herbert v. Architect of Capitol*, 766 F. Supp. 2d 59 (D.D.C.

2011).[8] It is also true that, in that prior case, Herbert brought discrete claims of discrimination

and retaliation based on some of the incidents that also serve as component acts in support of his

hostile work environment claim in this case. This Court entered summary judgment in the

AOC's favor on some of those discrete claims either because no reasonable fact-finder could find

that the challenged employment action was materially adverse or because no reasonable fact-

---

[7] Nonetheless, Herbert concedes that "he cannot recover additional amounts" of monetary
damages for conduct predating the settlement agreement. Pl.'s Opp'n at 30 n.6. The Court will
hold Herbert to this unambiguous concession.

[8] Herbert elected not to appeal the Court's decision in that case.

finder could conclude that the employment action was undertaken with discriminatory or retaliatory intent. Here, the AOC assumes that, in support of his hostile work environment claim in this case, Herbert is precluded from relying on component acts that were addressed as discrete claims in the prior action. *See* Def.'s Mem. at 7. However, once again, the AOC has failed to support its assumption with any legal argument. Meanwhile, the Court agrees with Herbert that, "[t]o the extent the Court determined that these claims were not sufficiently adverse to be actionable standing alone," a different conclusion may be reached when they are considered collectively "in the context of his hostile work environment claim." Pl.'s Opp'n at 1 n.1. More problematic is the question of whether Herbert can rely on component acts when the Court previously found no reasonable fact-finder could conclude that the underlying employment action was undertaken with discriminatory or retaliatory intent. In this vein, the Court recognizes that evidence that bears no connection to the plaintiff's protected status cannot support a hostile work environment claim. *Harris v. Wackenhut Servs., Inc.*, 419 F. App'x 1, 2 (D.C. Cir. 2011) (*per curiam*) (citing, *inter alia*, *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 440 (2d Cir. 1999)). Therefore, courts should exclude from consideration employment-related actions that "lack a linkage" to discrimination or retaliation. *Bryant v. Brownlee*, 265 F. Supp. 2d 52, 63 (D.D.C. 2003) (quoting *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002)). However, because the question of whether the relevant component acts have a linkage to discrimination or retaliation has never been litigated in this case, in arguing that Herbert cannot rely on these component acts, the AOC would appear to be implicitly relying upon a theory of collateral estoppel, or issue preclusion. *See generally S. Pac. R.R. Co. v. United States*, 168 U.S. 1, 48-49 (1897) ("The general principle . . . is that a right, question, or fact distinctly put in issue, and directly determined by a court of competent jurisdiction, as a ground

of recovery, cannot be disputed in a subsequent suit between the same parties or their privies."").

However, the party invoking collateral estoppel "bears the burden of establishing that the

conditions for its application have been satisfied," *In re Subpoena Duces Tecum Issued to*

*Commodity Futures Trading Comm'n*, 439 F.3d 740, 743 (D.C. Cir. 2006), and the AOC has not

even attempted to discharge that burden in this case.  Accordingly, the Court once again declines

to reach the merits in the absence of adequate briefing from the parties.[9]

   Third, although it is not altogether clear from the AOC's disjointed submissions, it

appears that the AOC intends to argue that some of the component acts relied upon by Herbert in

support of his hostile work environment claim are "discrete act[s] that cannot be used to 'cobble

up' an [sic] hostile work environment claim."  Def.'s Reply at 12.  True, "this jurisdiction frowns

on plaintiffs who attempt to bootstrap their alleged discrete acts of retaliation into a broader

hostile work environment claim," *Baloch v. Norton*, 517 F. Supp. 2d 365, 365 (D.D.C. 2007),

*aff'd sub nom. Baloch v. Kempthorne*, 550 F.3d 1191 (D.C. Cir. 2008), but a plaintiff may

nonetheless "combine discrete acts to form a hostile work environment claim" provided he

otherwise "meet[s] the required hostile work environment standard," *Baird*, 662 F.3d at 1252.  In

this Circuit, "[t]here is no bright line rule for determining when a variety of component-acts may

be considered collectively," *Mason v. Geithner*, 811 F. Supp. 2d 128, 178 (D.D.C. 2011), and yet

the AOC does not even clearly identify which acts it believes should be excluded from the

Court's consideration and then articulate why they should be excluded.

---

[9]  Additionally, although the Court need not reach the issue, it observes that collateral estoppel is
an affirmative defense, *Blonder Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350
(1971) (citing FED. R. CIV. P. 8(c)(3)), and courts are generally precluded from considering
affirmative defenses that are not identified in a responsive pleading, *Gilbert v. Napolitano*, __
F.3d __, 2012 WL 678141, at *2 (D.C. Cir. 2012).  Here, the AOC does not identify collateral
estoppel as a defense in its Answer.  *See* Answer to Second Am. Compl., ECF No. [35].

Fourth, as aforementioned, the argument tendered by the AOC in its opening memorandum with respect to Herbert's hostile work environment claim is utterly conclusory. Indeed, the AOC did not even bother to mention the full scope of Herbert's hostile work environment claim until it filed its reply memorandum, in which the AOC finally referenced, albeit in passing and for the first time, the approximately "thirty events that [Herbert] believes created the hostile work environment." Def.'s Reply at 6.  The problem with this approach is that the initial burden rested with the AOC, as the party seeking summary judgment, to establish the absence of a genuine dispute of material fact and its entitlement to judgment as a matter of law.  By waiting until its reply to address the actual factual underpinnings of Herbert's hostile work environment claim, the AOC deprived Herbert of an opportunity to render a full and fair response.  Under these circumstances, the Court exercises its discretion to disregard the factual and legal arguments raised by the AOC for the first time in its reply memorandum. *See Baloch*, 517 F. Supp. 2d at 348 ("If the movant raises arguments for the first time in his reply to the non-movant's opposition, the court [may] either ignore those arguments . . . or provide the non-movant an opportunity to respond).

Moreover, even in reply, the AOC fails to address the full scope of Herbert's hostile work environment claim, affording scant, if any, attention to each of the component acts that Herbert identified as supporting his hostile work environment claim during the course of discovery. *See, e.g.*, Pl.'s Resps. to Def.'s Interrogs. & Reqs. for Production of Docs., ECF No. [43-13], at 2-4. In adopting this approach, the AOC appears to be laboring under the misapprehension that Herbert was required to expressly identify each of these component acts in his Second Amended Complaint. *See* Def.'s Reply Stmt. ¶ 45 (faulting Herbert for failing to include a "Count in the complaint that would encompass [these] allegations").  To that extent, the AOC is mistaken. An

employment discrimination plaintiff, like any other, need not set forth "detailed factual allegations" in his complaint, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), only sufficient factual content to permit a "reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). Significantly, when it comes to hostile work environment claims, the unlawful employment action is the environment itself, viewed as an indivisible whole.  Consistent with this framework, a plaintiff asserting a hostile work environment claim is not required to plead "each element of [his] claim in [his] Complaint," *Tucker v. Howard Univ. Hosp.*, 764 F. Supp. 2d 1, 9 (D.D.C. 2011), "nor specify in exhaustive detail each and every component act comprising the allegedly hostile or abusive work environment," *Graves v. District of Columbia*, 777 F. Supp. 2d 109, 121 (D.D.C. 2011).  By failing to address most of the component acts underlying Herbert's hostile work environment claim, the AOC has failed to establish the absence of a genuine dispute of material fact and its entitlement to judgment as a matter of law.

Meanwhile, where the AOC does address specific component acts identified by Herbert in its reply, its response almost invariably contravenes the terms of this Court's Scheduling and Procedures Order.  Simply by way of example, the AOC (1) improperly attempts to incorporate argument made in its memoranda instead of setting forth all the information relevant to its response in its correspondingly numbered paragraph, *see* Def.'s Reply Stmt. ¶¶ 45-47, 49-50, 56-60, 102-111, (2) fails to offer precise citations to evidence in the record, *id.* ¶¶ 46-48, 49-53, 55-60, 65-119, and (3) fails to segregate its response to each paragraph in Herbert's responsive statement with a separate corresponding paragraph, *see id.* ¶¶ 46-47, 49-50, 52-53, 56-60, 66-72, 74-75, 76-79, 80-83, 85-86, 98-99, 102-111, 113-119.  The Court declines to consider a response so plainly non-compliant with its directives.

In short, the AOC's showing is patently inadequate to establish the absence of a genuine dispute of material fact and its entitlement to judgment as a matter of law in connection with Herbert's hostile work environment claim. Accordingly, the Court shall **DENY** the AOC's [36] Motion for Summary Judgment insofar as it seeks judgment on Count III.

### D.   Counts IV and V: The Materially Adverse Action Requirement and the Letter of Reprimand

In Counts IV and V, Herbert claims that the AOC discriminated and retaliated against him when he was issued an "unwarranted" letter of reprimand arising out of a verbal altercation between him and a co-worker on May 1, 2010. *See* Compl. ¶¶ 54, 59. Count IV sounds in discrimination and Count V sounds in retaliation. With respect to both counts, the AOC contends that Herbert cannot show that he was subjected to a materially adverse employment action. The Court agrees.

On May 25, 2010, Williams, the Supervisor of the Paint Shop, issued Herbert a letter in which he proposed that Herbert be "officially reprimand[ed] . . . for [his] involvement in an altercation with a co-worker during which [he] exhibited inappropriate behavior, causing the situation to escalate and get out of hand." Williams Decl. Ex. 1 (Ltr. From E. Williams to C. Herbert dated May 25, 2010) at 1. In the letter, Williams recounted the AOC's perspective of the underlying incident:

> On Saturday, May 1, 2010, you were involved in an incident in the workplace while you and a work crew were painting Room 2402 RHOB. The incident involved playing a radio in the office suite. It was reported that the radio was loud and had a lot of static, which was annoying to your co-workers. You were asked to move the radio into the room where you working and to turn the volume down, which you did. However, because of the reported static, the radio continued to annoy co-workers. When you were asked again about the radio, you responded to a co-worker in an unprofessional manner by raising your voice and calling your co-worker a "boy." As a result, the incident escalated to shouting. You reported the incident to the Capitol Police because you stated that you felt

> threatened.   The Capitol Police informed me that no violent act
> was committed and that the incident could be handled in the AOC.

*Id.* On August 4, 2010, Stephen T. Ayers ("Ayers"), the Architect of the Capitol, "notif[ied]

Herbert of [his] final decision . . . to officially reprimand [Herbert] for [his] involvement in [the]

altercation." Williams Decl. Ex. 1 (Ltr. From S. Ayers to C. Herbert dated Aug. 4, 2010) at 1.

Incorporating the "specific details" from the original proposal letter by Williams, Ayers

informed Herbert that "[c]opies of the official reprimand, proposal, and concurrence letters

[would] be placed in [his] official personnel folder (OPF) and may form the basis for more

severe disciplinary action in the event of future instances of misconduct." *Id.*   However, "[i]f

there are no further disciplinary problems, these documents may be removed from [Herbert's]

OPF, at [his] written request, after one year from the date of the official reprimand." *Id.*

    In this Circuit, "[a] letter of counseling, written reprimand, or unsatisfactory performance

review, if not abusive in tone or language or a predicate for a more tangible form of adverse

action, will rarely constitute materially adverse action." *Hyson*, 802 F. Supp. 2d at 102; *accord*

*Grosdidier v. Chairman, Broad. Bd. of Governors*, 774 F. Supp. 2d 76, 113 (D.D.C. 2011).  In

*Baloch v. Kempthorne*, 550 F.3d 1191 (D.C. Cir. 2008), the United States Court of Appeals for

the District of Columbia Circuit addressed the question of when a letter of reprimand may rise to

the level of a materially adverse action under Title VII's anti-retaliation provision.[10]  In that case,

the employee received, in addition to two letters of counseling, an official letter of reprimand.

The essential thrust of the letter of reprimand at issue in *Baloch* is analogous to the one at issue

here: among other things, the letter faults the employee for his "unprofessional and discourteous

---

[10]  For purposes of convenience, the Court focuses its attention on explaining why no reasonable
fact-finder could conclude that the letter of reprimand was materially adverse under the more
liberal retaliation standard.  Because the standard for material adversity in the discrimination
context is more stringent, it logically follows that Herbert's discrimination claim must also fail.

24

conduct." Def.'s Stmt. of Undisputed Material Facts, Ex. 11, *Baloch v. Norton*, Civil Action No.

03-1207 (RMU) (D.D.C. June 28, 2004), ECF No. [20-15], at 1.  However, the letter does not

end there, but proceeds, over the course of five single-spaced pages, to castigate the employee in

exhaustive detail for what were characterized as "very serious matters of misconduct." *Id.* at 4.

The employee was told that the letter would be placed in his official personnel file for one year

and "warned that future repetitions of [such] conduct or other misconduct could lead to a

proposal of a more severe disciplinary action . . . up to and including removal from [] 

employment." *Id.* at 4-5.  Noting that the letter "contained no abusive language, but rather job-

related criticism," the Court of Appeals held that the employee could not show that the letter was

materially adverse. *Baloch*, 550 F.3d at 1199.

  Here, Herbert's letter of reprimand, which faults him for "inappropriate" and

"unprofessional" behavior, is devoid of any abusive language.  Williams Decl. Ex. 1 (Ltr. From

E. Williams to C. Herbert dated May 25, 2010) at 1.  Indeed, the letter is restrained.  To the

extent it may even be characterized as "adverse," it is plainly less adverse than the letter of

reprimand that the Court of Appeals found to be insufficient to support a retaliation claim in

*Baloch*.  Moreover, like the letter at issue in *Baloch*, Herbert's letter of reprimand was to remain

in his personnel file for no more than a year.  Although this Court is mindful that letters of

reprimand are neither *per se* actionable or non-actionable, courts have routinely found similar

letters insufficient to support a claim for retaliation.  *See, e.g., Reshard v. LaHood*, 2010 WL

1379806, at *17 (D.D.C. Apr. 7, 2010) (letter of reprimand for employee's failure to perform

assigned duties not materially adverse, even though it would be placed in employee's personnel

file for up to three years); *Harper v. Potter*, 456 F. Supp. 2d 25, 29 (D.D.C. 2006) (letter of

"suspension" for failure to perform assigned duties that could remain in employee's personnel

file for two years and serve as the basis for future discipline was not materially adverse, where

suspension was hypothetical and the letter "bore no consequences"); *Concise v. Salazar*, 601 F.

Supp. 2d 196, 198-99 (D.D.C. 2009) (letter of counseling "highlight[ing] plaintiff's 'rude and

discourteous behavior'" and asking plaintiff to respect other employees would not have

dissuaded a reasonable employee from making a charge of discrimination), *aff'd*, 377 F. App'x

29 (D.C. Cir. 2010).  In fact, in a prior civil action brought by Herbert against the AOC, this

Court held that a reasonable fact-finder could not find a similar letter of reprimand to be

materially adverse. *See Herbert*, 766 F. Supp. 2d at 75-78.  The same logic applies here.

Herbert attempts to distinguish his case from *Baloch* and its progeny by arguing that the

allegations in his letter of reprimand were "questionable."  Pl.'s Opp'n at 19.  Significantly,

although Herbert may contest the extent of his responsibility for instigating and escalating the

incident, it is undisputed that he and a co-worker, Gilbert Norwood ("Norwood"), were in fact

involved in a verbal altercation while painting an office suite because Herbert was playing his

radio in the workplace.  Def.'s Stmt. ¶ 27; Pl.'s Resp. Stmt. ¶ 27.  While Herbert maintains that

he was unaware that his radio was annoying his co-workers and that he raised his voice, he

readily admits that, when approached by Norwood, he said "something to the effect of 'do what

you need to do, baby boy.'"  Herbert Decl. ¶ 6(g); *see also* Dep. of Cornell Herbert ("Herbert

Dep."), ECF No. [43-4] at 7 ("I said, 'Baby boy, do what you got to do.'").  By Herbert's own

admission, even though Norwood reacted negatively to this, he nonetheless proceeded to "sa[y]

it one more time, 'Baby boy, do what you got to do.'"  Herbert Dep. at 7.  Regardless of the

extent of Herbert's ultimate responsibility for instigating and escalating the incident, the

undisputed facts are at the very least entirely consistent with the AOC's characterization of

Herbert's response as "inappropriate" and "unprofessional."  Williams Decl. Ex. 1 (Ltr. From E.

Williams to C. Herbert dated May 25, 2010) at 1.  Herbert may disagree with the AOC's precise

characterization of the events that transpired on the day in question, but the allegations in the

letter of reprimand are not so "questionable" as to permit a reasonable fact-finder to conclude

that the letter was materially adverse.  *See Saunders v. Mills*, __ F. Supp. 2d __, 2012 WL

390379, at *8 (D.D.C. Feb. 8, 2012) (finding that a plaintiff's disagreement with the contents of

a counseling letter was insufficient to render it materially adverse).

      Herbert also attempts to elevate his case above the run-of-the-mine letter of reprimand

case by arguing that, at the AOC, letters of reprimand are "used to impose later disciplinary

actions."  Pl.'s Opp'n at 21.  Like Herbert's letter of reprimand, the letter of reprimand facing the

Court of Appeals in *Baloch* expressly provided that future misconduct could lead to more severe

disciplinary action, including termination.  Perhaps recognizing this fact, Herbert cites to a single

event that he claims puts this case outside *Baloch*.  Specifically, Herbert claims that the letter of

reprimand that he was previously issued in 2007—the same letter of reprimand that this Court

concluded could not be described as materially adverse in a prior civil action, *see Herbert*, 766 F.

Supp. 2d at 75-78—was relied upon in the issuance of the second letter of reprimand that Herbert

received in 2010.  *See* Pl.'s Opp'n at 20 (citing Pl.'s Resp. Stmt. ¶ 65).  In this regard, it is

undisputed that William Wood, Jr., the Assistant Superintendent, took into account the fact that

Herbert had previously received a letter of reprimand when he concurred with Williams'

recommendation that Herbert should be issued a second letter of reprimand in 2010.  Pl.'s Resp.

Stmt. ¶ 65; Def.'s Reply Stmt. ¶ 65.  However, as the AOC observes, "[t]he problem for

[Herbert] is that the second letter of reprimand is not more severe than the first – they are the

same level of discipline and the second letter contained no abusive language but only job-related

criticism."  Def.'s Reply at 14.  In other words, whether or not the first letter of reprimand

contributed to the second is of no moment; no reasonable fact-finder could conclude that either letter of reprimand was materially adverse.

In the end, no reasonable fact-finder could conclude that the issuance of the letter of reprimand that underlies Counts IV and V was materially adverse. For this reason, the Court shall **GRANT** the AOC's [36] Motion for Summary Judgment insofar as it seeks judgment on Counts IV and V of the Second Amended Complaint and **ENTER** judgment in the AOC's favor on those claims.

### III. CONCLUSION

For the reasons set forth above, the AOC's [36] Motion for Summary Judgment shall be **GRANTED-IN-PART** and **DENIED-IN-PART**. Specifically, the Court shall **ENTER** judgment in the AOC's favor on Counts I, IV, and V of the Second Amended Complaint because no reasonable fact-finder could conclude that the employment actions challenged through these claims were materially adverse; the Motion shall otherwise be **DENIED**. Accordingly, only Count II, through which Herbert claims that he was retaliated against when the AOC did not select him to serve as a full-time "point man" during a project in 2008, and Count III, through which Herbert claims that he has been continuously subjected to a discriminatory and retaliatory hostile work environment, survive the Court's decision today. An appropriate Order and Judgment accompanies this Memorandum Opinion.

Date:   March 20, 2012

                                        _____/s/_____
                                        **COLLEEN KOLLAR-KOTELLY**
                                        United States District Judge