**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| CORNELL HERBERT, |
| Plaintiff, |
| v. |
| ARCHITECT OF THE CAPITOL, |
| Defendant. |

Civil Action No. 09-01719 (CKK)

**MEMORANDUM OPINION**
(January 31, 2013)

From 2004 through 2011, Plaintiff Cornell Herbert ("Herbert"), an African American, was employed as a painter in the Paint Shop for the House of Representatives, which falls under the supervision of Defendant, the Architect of the Capitol ("AOC"). In 2009, Plaintiff filed this action against the AOC, claiming that he was discriminated and retaliated against in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Congressional Accountability Act of 1995 (the "CAA"). This Court previously granted-in-part and denied-in-part the AOC's motion for summary judgment. *See Herbert v. Architect of Capitol*, 839 F. Supp. 2d 284 (D.D.C. 2012) (setting forth the background of the case). This action is now in the pretrial stage of litigation on the two remaining counts, Counts II and III, and is proceeding towards a jury trial that is yet to be scheduled. Count II alleges that Herbert was retaliated against, due to his prior complaints of discrimination, when the AOC did not select him to serve as a full-time "point man" during a project in 2008. *See* Second Am. Compl. ¶¶ 44-47. Count III alleges that Herbert was continuously subjected to a discriminatory and retaliatory hostile work environment while he was working at the Paint Shop. *See* Second Am. Compl. ¶¶ 48-51. Presently before the Court

are Plaintiff's [62] Motion *in Limine* and the AOC's [65] Motion *in Limine*, both of which request relief in connection with various evidentiary disputes.  Upon consideration of the parties' submissions,[1] the relevant authorities, and the record presently before the Court, and for the foregoing reasons, the Court shall **DENY** Plaintiff's [62] Motion *in Limine* and **GRANT-IN-PART** and **DENY-IN-PART** the AOC's [65] Motion *in Limine*.

## I.  LEGAL STANDARD

Although neither the Federal Rules of Civil Procedure nor the Federal Rules of Evidence expressly contemplate motions *in limine*, the practice of allowing such motions has developed over time "pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n. 4, 105 S. Ct. 460, 83 L. Ed. 2d 443 (1984).  Consistent with the historical origins of the practice, motions *in limine* are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions."  *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1070 (3d Cir. 1990).  Broadly speaking, the Federal Rules of Evidence permit the admission of "relevant evidence" – that is, evidence that "has any tendency to make a fact [of consequence] more or less probable than it would be without the evidence," FED. R. EVID. 401 – provided it is not otherwise excluded by the Rules, the Constitution of the United States, or an Act of Congress, FED. R. EVID. 402, and its probative value is not "substantially outweighed by a danger of ... unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

---

[1] While the Court renders its decision on the record as a whole, its consideration has focused on the following documents: Pl.'s Mot. & Mem., ECF No. [62]; Def.'s Opp'n, ECF No. [67]; Pl.'s Reply, ECF No. [68]; Def.'s Mot. & Mem., ECF No. [65]; Pl.'s Opp'n, ECF No. [66]; Def.'s Reply, ECF No. [69]; Second Am. Compl., ECF No. [33]; Pretrial Stmt., ECF No. [64].  In an exercise of its discretion, the Court finds that holding oral argument would not be of assistance in rendering a decision.  *See* LCvR 7(f).

In deference to their familiarity with the details of the case and greater experience in evidentiary matters, trial judges are afforded broad discretion in rendering evidentiary rulings, a discretion which extends to assessing the probative value of the proffered evidence and weighing any factors against admissibility.  *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384, 128 S. Ct. 1140, 170 L. Ed. 2d 1 (2008).  The trial judge's discretion extends not only to the substantive evidentiary ruling, but also to the threshold question of whether a motion *in limine* presents an evidentiary issue that is appropriate for ruling in advance of trial.  *United States v. Valencia*, 826 F.2d 169, 172 (2d Cir. 1987); *accord Rosemann v. Roto–Die, Inc.*, 377 F.3d 897, 902 (8th Cir. 2004); *United States v. Layton*, 720 F.2d 548, 553 (9th Cir. 1983), *cert. denied*, 465 U.S. 1069, 104 S. Ct. 1423, 79 L. Ed. 2d 748 (1984), *and overruled on other grounds by United States v. W.R. Grace*, 526 F.3d 499 (9th Cir. 2008).  The trial judge has the "discretion to rule *in limine* or to await developments at trial before ruling." Stephen A. Saltzburg *et al.*, FEDERAL RULES OF EVIDENCE MANUAL §103.02[12] (9th ed. 2006). "[I]n some instances it is best to defer rulings until trial, [when] decisions can be better informed by the context, foundation, and relevance of the contested evidence within the framework of the trial as a whole." *Casares v. Bernal*, 790 F. Supp. 2d 769, 775 (N.D. Ill. 2011) (citation omitted).

## II.  DISCUSSION

The Court shall first address the AOC's motion and thereafter turn to Plaintiff's motion. Because of the number and substantive variation of both parties' requests, the Court shall discuss the factual background relevant to each separate request within the context of its analysis of that request.  Further, because of the significant overlap between certain matters raised in the parties' respective motions, the Court shall occasionally, in discussing one party's motion, refer to briefing submitted in connection with the opposing party's motion.

### A. The AOC's Motion *in Limine*

The AOC's Motion *in Limine* requests the following relief: (1) that the AOC be permitted to present at trial evidence of Plaintiff's arrest, indictment, and criminal conviction to interrogate witnesses who testify about Plaintiff's emotional pain and suffering; (2) that the AOC be permitted to present at trial testimony from the Chief Clerk of the House Committee on Oversight and Government that Plaintiff sexually harassed her; (3) that the Court preclude Plaintiff from offering evidence of the "Tonda Cave" investigation – an internal investigation concerning disruptive behavior in the Paint Shop; (4) that the Court preclude Plaintiff from offering evidence about discipline given to Calogero DiPasquale, a white male who was also a painter in the Paint Shop and whom Plaintiff argues received more favorable treatment than Plaintiff; (5) that the Court seat a jury of twelve; and (6) that the Court preclude Plaintiff from offering evidence of discrete acts that allegedly contributed to the creation of the hostile work environment which are not referred to in Plaintiff's statement of his claims in the parties' Joint Pretrial Statement. The Court shall address each request in turn.

### 1. Evidence Regarding Plaintiff's Arrest, Indictment, and Criminal Conviction

The AOC contends, based upon information gleaned from an online news article, that Plaintiff was arrested, indicted, and convicted for "slashing his former wife's boyfriend with a butcher's knife." Def.'s Reply at 1. Although Plaintiff decries the AOC's reliance on a newspaper article, challenges the AOC's "salacious" characterization of the events, and asserts a blanket objection to the overall accuracy of AOC's allegations, *see* Pl.'s Opp'n at 1, 2 & n.2, Plaintiff does not contest the following underlying facts: that Plaintiff was arrested on September 27, 2009, for assaulting his former wife's boyfriend; that on January 20, 2010, Plaintiff was indicted on charges of attempted first-degree murder and malicious assault (which the news article reported carried possible sentences of three to fifteen years, and two to ten years,

respectively); that Plaintiff was tried in March 2011; that on March 10, 2011, after a three-day trial, a petit jury found Defendant guilty of two counts of misdemeanor battery, which were merged at his sentencing on May 23, 2011; that Plaintiff was sentenced to one year in prison; and that because of his conviction and sentence to jail, Plaintiff resigned from his employment at the Paint Shop. Def.'s Mem. at 2-3. *See also* Pl.'s Opp'n, Ex. 1 (May 25, 2011 Cir. Ct. of Jefferson Cty, West Va. Sentencing Order).

The AOC requests that the Court permit it to introduce evidence regarding the fact of, and circumstances surrounding, Plaintiff's arrest, indictment, and conviction. Notably, the AOC does not purport to offer the evidence pursuant to Federal Rule of Evidence 609, which provides for impeachment of a witness's character for truthfulness by evidence of a criminal conviction. Def.'s Reply at 2. Rather, the AOC argues that the evidence is relevant to two issues in this case. First, the AOC asserts that it provides the explanation for Plaintiff's resignation. The Court need not address this argument, however, because the parties have indicated their agreement to enter into a stipulation to the effect that Plaintiff resigned his position for purely personal reasons having nothing to do with the environment or conditions of his employment, and that he does not contend that his claim for damages should include the fact that he resigned from the Paint Shop. *See* Pl.'s Mem. at 6; Pl.'s Opp'n at 2-3; Def.'s Reply at 2.

The AOC's second point, however, remains fiercely contested. Plaintiff is claiming that he suffered emotional damages as a result of the discrimination and retaliation he endured at the Paint Shop – some of which, the AOC argues, occurred after his arrest. Def.'s Mem. at 3. At trial, Plaintiff intends to offer four witnesses who will testify about his emotional pain and suffering – including friends and/or relatives and Plaintiff's treating physician. Pl.'s Opp'n at 2. Plaintiff will himself presumably testify to the same. The AOC argues that "[a]ppropriate

5

impeachment of that testimony will be inquiry into the other issues in Plaintiff's life at the relevant time period that were the likely causes of Plaintiff's emotional pain and suffering – e.g., the fact that he faced the possibility of a lengthy prison sentence." Def.'s Mem. at 3.

Plaintiff counters that the "real reason" behind the AOC's introduction of this evidence is to embarrass Plaintiff and prejudice the jury against him. Pl.'s Opp'n at 1. He argues that the prejudice that would result from the introduction of evidence about his encounter with the criminal justice system substantially outweighs any minimal relevance the criminal proceedings may have to the question of his hostile environment damages. *Id*. at 5-6. Plaintiff further argues that the introduction of such evidence could lead to a time-consuming "mini-trial" regarding the circumstances of Plaintiff's arrest, incitement, criminal trial, conviction, and incarceration. *Id*. Accordingly, Plaintiff submits that all evidence relating to his criminal activity be excluded as more prejudicial than probative pursuant to Federal Rule of Evidence 403. *Id*.

Upon consideration of the parties' arguments, it is clear to the Court that, in light of Plaintiff's anticipated proffer at trial of evidence regarding his alleged emotional damages, evidence that other stress factors in his life (particularly those as objectively taxing as divorce and criminal justice proceedings) were more significant contributors to Plaintiff's emotional pain and suffering than the alleged problems at work, would be highly probative as to Plaintiff's entitlement to recover damages. While Plaintiff argues that his arrest and subsequent conviction are of minimal relevance because they occurred at the "tail end" of his employment at the Paint Shop, Plaintiff provides no factual support whatsoever for this argument. *See* Pl.'s Mem. at 7. It is not even clear to the Court on which date Plaintiff's employment with the AOC terminated. To be sure, this is not entirely surprising, given Plaintiff's pattern of vague submissions throughout the course of this litigation. Indeed, even at this late stage in the action, the Court

observes that Plaintiff has failed, in his statement of claims and description of proposed witness testimony included in the parties' present Joint Pretrial Statement, to sufficiently specify the discrete conduct upon which his hostile environment claim is based, not to mention the timeframes applicable thereto. It is expected that the revised Joint Pretrial Statement, which by prior order of this Court, is to be filed on March 4, 2013, will cure these defects. *See* Order (Jan. 31, 2013), ECF. No. [74].

The Court need not belabor the point except to note that Plaintiff cannot on the one hand attempt to claim damages for employment induced emotional distress for a time period lasting over six years from 2004 through 2011, *see* Pretrial Stmt. at 1, without subjecting himself to cross-examination about other stress factors present in his life during that time. The Court further notes that, among those incidents that Plaintiff does identify in his Second Amended Complaint (the operative complaint in this action) as having occurred on a specific date, or range of dates, more than a few are alleged to have occurred after both the dates of his purported arrest (September 27, 2009) and alleged indictment (January 20, 2010). *See* Second Am. Compl. ¶ 36 (verbal assault and physical threats from a co-worker relating to a dispute about the music playing on Plaintiff's radio in May 2010); *id.* ¶ 36-37 (reprimand regarding incident described in paragraph 36 received by Plaintiff on May 25, 2010); ¶ 38 (continual assignment to difficult and grunt work, until and including the time of the filing of the Second Amended Complaint, on February 22, 2011). Other "ongoing" conduct of which Plaintiff has complained apparently continued at least until, and including, March 30, 2011, the date on which he filed his opposition to the AOC's summary judgment motion – which was after his March 10, 2011 trial and conviction. *See,* Pl.'s Stmt. of Facts, ECF No. [43-1] ¶ 115 ("Since approximately April 2009, when Plaintiff initiated this hostile work environment action, Plaintiff has not been assigned to

work on desirable assignments or so called high-profile jobs … "), ¶ 116 ("Plaintiff has regularly been assigned to paint a large storage area, which is extremely hot and lacks adequate ventilation.").

While the Court recognizes the high probative value of evidence regarding other stress factors in Plaintiff's life during the time relevant to his alleged emotional distress, the Court is also mindful of the fact that granting the AOC free reign to question Plaintiff and Plaintiff's witnesses regarding all of the circumstances of Plaintiff's alleged criminal activity runs the risk of unfairly prejudicing Plaintiff in the jurors' eyes as an "out of control, jealous ex-husband who was convicted of 'slashing his former wife's boyfriend with a butchers' knife.'" *See* Pl.'s Reply at 2. Thus, in order to mitigate any danger of unfair prejudice, the Court shall grant the AOC its request, subject to certain substantive limitations. *See, e.g.*, *Barber v. Malaniuk*, Civ. A. No. 08-6363, 2012 U.S. Dist. LEXIS 83099, at *21 (N.D. Ill. June 8, 2012) (denying motion for new trial in a wrongful imprisonment case, where the court found that because evidence of a subsequent arrest, conviction, and incarceration was highly probative insofar as the defendants argued it was a supervening cause of the plaintiff's alleged emotional distress, such evidence was admissible, subject to the following limitations so as to avoid unfair prejudice: "the jury was informed only that, after the night in question, [the] plaintiff had been convicted of an unrelated crime and served time in prison. The defense was precluded from disclosing that [the] [p]laintiff's conviction was a felony conviction[.] The Court also immediately provided the jury with a limiting instruction, immediately thereafter, stating it 'may consider this testimony [of the conviction] only for the limited purpose of determining the issue of emotional distress and damages.'").

Accordingly, the Court, in an exercise of its discretion, shall **GRANT-IN-PART** and **DENY-IN-PART** AOC's request.  The Court shall permit the AOC to cross-examine Plaintiff and Plaintiff's witnesses regarding Plaintiff's involvement in the criminal justice system, but such questioning shall be offered only to impeach Plaintiff on the issue of his alleged emotional distress and shall additionally be subject to the various substantive limitations hereafter delineated by the Court.  Specifically, where appropriate based upon the scope (and timeframe) of testimony given at trial by Plaintiff or Plaintiff's witnesses on the issue of Plaintiff's alleged emotional distress, the AOC may raise on cross-examination the following matters:  that on September 27, 2009, Plaintiff was arrested for non-work related conduct; that on January 20, 2010, Plaintiff was criminally charged; that Plaintiff was tried in March 2011; and that Plaintiff was convicted of a crime on March 10, 2011.  Because the Court has been provided with no information about the date of Plaintiff's resignation from the Paint Shop or the dates of his imprisonment, it declines to issue a ruling, on the record before it, as to the admissibility of the fact of Plaintiff's May 23, 2011 sentencing or his imprisonment.   Of course, should Plaintiff open the door by offering detail about any of these matters, the AOC may request the Court to revisit these limitations at that time.[2]  Further, before the AOC commences its cross-examination of Plaintiff or any of Plaintiff's witnesses who testify as to Plaintiff's alleged emotional distress, both parties shall have the opportunity to raise with the Court, outside of the presence of the jury, any concerns they may have regarding the proper scope of the AOC's inquiry into Plaintiff's involvement in the criminal justice system.  Finally, Plaintiff may propose, and the Court shall

---

[2] While the Court does not purport to forecast the testimony at trial, it notes – merely for explication – that the sort of testimony which might "open the door" may include, for example, testimony regarding the nature of the crime for which Plaintiff was charged, or testimony that, due to his supervisors' alleged discriminatory and retaliatory conduct, he suffered residual emotional distress well *after* the date of his resignation from the Paint Shop.

provide, a limiting instruction, alerting the jurors to the narrow purpose for which they may consider this evidence.

### 2. Testimony of the Chief Clerk of the House Committee on Oversight and Government that Plaintiff Sexually Harassed Her

The parties' Joint Pretrial Statement indicates that Plaintiff will testify "[t]hat his colleagues made frivolous complaints about him to the Equal Employment Opportunity and Conciliation Programs Division, including a frivolous complaint of sexual harassment." Pretrial Stmt., Ex. 1, at 2. While the Pretrial Statement does not provide further detail as to the timing or source of the alleged frivolous complaint of sexual harassment, Plaintiff's opposition brief makes clear that this proposed testimony refers to Plaintiff's allegation that in early 2009, his co-worker, Gilbert Norwood, submitted a false report to the AOC's EEO Office that accused him of sexually harassing women in the workplace. Pl.'s Opp'n at 6. To counter this proposed testimony, the AOC intends to offer testimony from Linda Good, the Chief Clerk of the House Committee on Oversight and Government, that she was sexually harassed by Plaintiff in April 2011, and that she filed a complaint regarding this alleged harassment with the EEO Office. Def.'s Mem. at 4; Pretrial Stmt., Ex. 2, at 8. The AOC argues that such evidence is permissible to impeach Plaintiff's claim that Mr. Norwood's accusations regarding Plaintiff's harassing conduct towards women were false. Def.'s Mem. at 4.

Plaintiff argues that this must be excluded as improper character evidence under Federal Rule of Civil Procedure 404(b), and this Court agrees.[3] Federal Rule of Evidence 404(b) –

---

[3] Although Plaintiff does not raise this issue in his opposition brief, the Court observes that as part of Plaintiff's objections to Ms. Good's testimony asserted in the parties' Joint Pretrial Statement, Plaintiff also argues that Ms. Good's testimony should be excluded because the AOC failed to supplement its discovery responses to include the documents relating to Ms. Good. *See* Pretrial Stmt., Ex. 2 at 8. Because the Court finds today that the evidence should be excluded under Federal Rule of Civil Procedure 404(b), it need not reach the merits of Plaintiff's alternative argument regarding the purported inadequacy of the AOC's discovery disclosures.

which applies in both civil and criminal cases, *Huddleston v. U.S.*, 485 U.S. 681, 685, 108 S. Ct 1496, 1499 (1988) – provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but "may be admissible for another purpose," including proving "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(1), (2). Importantly, the party offering the evidence need not show that the evidence is being offered for one of the purposes specifically enumerated in the rule. *United States v. Bowie*, 232 F.3d 923, 929-30 (D.C. Cir. 2000). Rather, the party need only show that it is offered for a valid purpose other than to prove a person's propensity to commit similar acts. *Id.* at 929 ("Although the first sentence of Rule 404(b) is framed restrictively, the rule itself is quite permissive, prohibiting the admission of ["other acts"] evidence in but one circumstance—for the purpose of proving that a person's actions conformed to his character.") (internal marks and citation omitted).

To be sure, if Plaintiff was claiming that *Ms. Good's* complaint against him was false and a component act contributing to his alleged hostile work environment, the AOC would unquestionable be entitled to put Ms. Good on the stand. But Plaintiff has made no such claim. Similarly, if Mr. Norwood's complaint concerned Plaintiff's conduct towards Ms. Good, Ms. Good's testimony that she was sexually harassed by Plaintiff would be permissible to impeach Plaintiff's claim that Mr. Norwood's allegations against him were fabricated. But this is not the case either. Plaintiff has unambiguously asserted, and the AOC nowhere disputes, that "Ms. Good was not the subject of [Mr.] Norwood's allegations to the AOC's EEO Office in 2009." Pretrial Stmt., Ex. 2, at 8. *See also* Pl.'s Opp'n at 6. Indeed, the AOC's own description of Ms. Good's testimony is limited to testimony about allegedly "inappropriate comments made to her

11

by [P]laintiff *in April 2011*" – approximately two years after Mr. Norwood submitted his complaint to the EEO Office.  Def.'s Mem. at 4 (emphasis added); Pretrial Stmt., Ex. 2, at 8.

Given the fact that Plaintiff does not rely on Ms. Good's complaint to support his hostile work environment claim, nor does Mr. Norwood's complaint appear to be based in any way on Plaintiff's conduct towards Ms. Good, Ms. Good's testimony would not – and could not – controvert Plaintiff's claim that the earlier-in-time accusations made about him to the EEO Office were false.  Rather, the only logical value of Ms. Good's testimony would be to show that, because Plaintiff sexually harassed Ms. Good in 2011, he likely possessed a propensity for harassing conduct and therefore Mr. Norwood's allegations that Plaintiff sexually harassed other women in the office two years prior must have been true.  In other words, the only plausible use of Ms. Good's testimony would be to "prove [Plaintiff's] character in order to show that on a particular occasion [Plaintiff] acted in accordance with the character" – the single use that is strictly prohibited by Rule 404(b).

For the foregoing reasons, and based on the present record, the AOC's request that the Court permit it to present testimony from Ms. Good that Plaintiff sexually harassed her is **DENIED**.  Of course, the AOC remains free to offer, as it intends to do, impeachment testimony from Mr. Norwood himself regarding Mr. Norwood's personal observations of Plaintiff's sexual harassment of women at work (which, as understood by the Court, does not include Plaintiff's conduct towards Ms. Good) in order to discredit Plaintiff's contention that Mr. Norwood's allegations against him were fabricated.  *See* Pretrial Stmt., Ex. 2, at 7.

**3.  Evidence Regarding the Tonda Cave Investigation**

Among the evidence Plaintiff intends to offer in support of his hostile work environment claim is evidence of the AOC's alleged instigation of an intimidating investigation into a

"troublemaker" in the Paint Shop.   Specifically, in his Second Amended Complaint, Plaintiff alleges that:

> In late December 2006 or early January 2007, then Assistant Superintended of the Architect of the Capitol, Robert Gleich, informed Tonda Cave, a Senior Human Resources Specialist who typically handled disciplinary actions, that there was a 'troublemaker' in the Paint Shop and that an investigation should be launched with a stated goal of intimidating the 'troublemaker' into ceasing his allegedly 'disruptive' activities.   The alleged troublemaking was found to be [Plaintiff.].   His 'troublemaking' was his formal and informal complaints of discrimination and retaliation.

Second Am. Compl. ¶ 22.

The AOC moves to preclude all evidence about the "Tonda Cave" investigation on the grounds that during Plaintiff's deposition, Plaintiff "admi[tted] that he only learned the facts leading him to believe that the investigation was targeted at a troublemaker in the Paint Shop as a result of discovery in [an earlier civil] case."[4]   Def.'s Mem. at 5.   The AOC argues that because none of Plaintiff's deposition testimony supports a finding that, *at the time of the investigation*, Plaintiff believed the investigation to be directed at him, the investigation could not constitute evidence of a workplace that was "permeated with discrimination, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusing working environment," as is required to sustain a hostile work environment claim.   *Id.* at 6 (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993)).   Put differently, the AOC argues, Plaintiff cannot recover damages for the Tonda Cave investigation because any emotional pain and suffering Plaintiff may have experienced as a result of learning about the purpose of the investigation constitutes unrecoverable "litigation-induced stress" resulting from discovery in his earlier employment discrimination case – not from his experiences at work.   *Id.*

---

[4] The AOC refers here to a separate action brought by Plaintiff against the AOC in this Court, which was litigated through the summary judgment stage and dismissed. *See Herbert v. Architect of Capitol*, 766 F. Supp. 2d 59 (D.D.C. 2011).   Herbert elected not to appeal the Court's decision in that case.

at 7.  Further, the AOC argues, for the first time on reply, that permitting Plaintiff to pursue the Tonda Cave investigation at trial would add at least three witnesses and multiple exhibits, and would also present a substantial risk of confusing the jury by diverting its attention from the claims before it.  Def.'s Reply at 7.

The Court finds the foregoing arguments unavailing.  First, to the extent the AOC argues that evidence concerning the Tonda Cave investigation is irrelevant because Plaintiff did not learn that he was the target of such investigation until well after it had concluded, such position lacks sufficient support in the record to warrant a pretrial evidentiary ruling.  The Court finds inadequate AOC's reliance on Plaintiff's perceptibly equivocal statements that he "later on learned … what [Ms. Cave] was doing" as a result of discovery in the prior law suit, *see* Def.'s Mem. at 5-6, especially when viewed within the broader context of several other statements indicating that Plaintiff was not only aware of the investigation at the time it was conducted but also had reason, based upon information contemporaneously relayed to him by coworkers whom Ms. Cave had questioned about Plaintiff, to believe that the investigation was targeted at him. *See, e.g.*, Pl.'s Opp'n, Ex. 6 (Feb. 16, 2011 Herbert Dep. Excerpts), at 70-71; *id*, Ex. 7 (Oct. 21, 2008 Herbert Dep. Excerpts), at 60-62.  Any inconsistencies that exist between Plaintiff's deposition testimony and his testimony at trial regarding Plaintiff's perception of, and alleged injury resulting from, the Tonda Cave investigation are fodder for cross-examination at trial and shall go to the weight that the jury attaches to Plaintiff's claims about the investigation – not to whether evidence about the investigation is admissible.

Second, to the extent the AOC argues that, even if relevant, evidence regarding the Tonda Cave investigation should be precluded pursuant to Federal Rule of Evidence 403, *see* Def.'s Reply at 7, it is well-established that the Court need not consider arguments raised for the first

time on reply.  *See Baloch v. Norton*, 517 F. Supp. 2d 345, 348 n.2 ("If the movant raises arguments for the first time in his reply to the non-movant's opposition, the court [may] either ignore those arguments … or provide the non-movant with an opportunity to respond."), *aff'd*, 550 F.3d 1191 (D.C. Cir. 2008).  Further, even if the Court were to consider the argument, it would not warrant a different result based upon the present record.  Evidence of an investigation by an employer, purportedly intended to discourage an employee from asserting complaints of discrimination and retaliation, would unquestionably be probative of said employer's liability on a hostile work environment claim. Testimony from those who instigated or conducted such an investigation, or presentation of exhibits relating to the investigation, would be highly relevant to Plaintiff's claim and as such can hardly be said to be unnecessary or a waste of time.  Further, the AOC has failed to explain why presenting evidence directly pertinent to a component act of Plaintiff's hostile work environment claim would "divert" the jury's attention from the claims before it.  The Court notes, however, that to the extent the testimony, as it unfolds at trial, provides significantly stronger support for the AOC's position that Plaintiff did not, and could not, have perceived the investigation as offensive at the time it was occurring, and that the evidence is otherwise irrelevant to Plaintiff's claims, the AOC may request that the Court revisit the admissibility of evidence concerning the Tonda Cave investigation at that time.

For the foregoing reasons, and based on the present record, the AOC's request that the Court exclude evidence regarding the Tonda Cave investigation is **DENIED**.[5]  However,

---

[5] The Court pauses to note that this holding, based on the present record, should in no way be viewed as inconsistent with the Court's holding in *Herbert*, 766 F. Supp. 2d 59, which granted the AOC summary judgment on Plaintiff's claims that the AOC discriminated and retaliated against him by conducting the Tonda Cave investigation.  There, the Court dismissed Plaintiffs retaliation and discrimination claims relating to the investigation on the basis that no reasonable fact finder could find that the investigation was sufficiently adverse to support Plaintiff's claims for discrimination or retaliation.  *Id*. at 79.  As the Court has previously explained: "[T]o the extent the Court determined that these claims were not sufficiently adverse to be actionable

Plaintiff is cautioned that his testimony regarding the Tonda Cave investigation must be limited to his experience and personal knowledge *at the time of the investigation*.  Plaintiff may not testify as to information he learned about the investigation through subsequent civil discovery.[6]

### 4.  Evidence Regarding Discipline Given to Calogero DiPasquale

The AOC's fourth request need not detain the Court for long.  The AOC objects to the admission of evidence and testimony that Plaintiff seeks to offer about the AOC's discipline of Calogero DiPasquale, a white male who also worked as a painter in the Paint Shop during Plaintiff's tenure at the AOC and whom Plaintiff argues was not disciplined for conduct that was similar to the alleged conduct for which Plaintiff was disciplined.  The Court finds the AOC's briefing regarding this category of evidence, comprised of only five short sentences, wholly inadequate.  The AOC does no more than cursorily assert as follows:

> "At least thirteen of [P]laintiff's proposed exhibits relate to DiPasquale, and they are documents that were obtained during discovery.  Apparently, [P]laintiff intends to offer these exhibits to prove that DiPasquale, who is white, received more favorable treatment than did [P]laintiff.  This is not, however, evidence that [P]laintiff was subjected to a hostile work environment.  The only evidence relevant to that claim is evidence about events that [P]laintiff endured in the workplace, not matters he later discovered via discovery in civil actions."

Def.'s Mem. at 7.

As Plaintiff appropriately replies, the AOC fails to grasp the purpose for which Plaintiff offers this evidence.  Pl.'s Opp'n at 10.  It is well-settled that evidence that bears no connection to the plaintiff's protected status cannot support a hostile work environment claim.  *Harris v. Wackenhut Servs., Inc.*, 419 F. App'x 1, 2 (D.C. Cir. 2011) (*per curiam*) (citing, *inter alia*,

---

standing alone, a different conclusion may be reached when they are considered collectively in the context of his hostile work environment claim."  *Herbert*, 839 F. Supp. 2d 284, 299.

[6] Although neither party raised the issue in their briefing, the Court deems it necessary to clarify that this restriction on Plaintiff's testimony should not be viewed as precluding counsel's presentation – upon laying a proper foundation at trial – of evidence, if any, that was obtained through discovery that may be relevant to the AOC's allegedly discriminatory and/or retaliatory intent against Plaintiff in instigating and conducting the investigation.

*Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 440 (2d Cir. 1999)).  Here, Plaintiff contends that the fact that Mr. DiPasquale (who is Caucasion and who had not filed any complaint with the EEO Office) was not disciplined for conduct that was similar to the alleged conduct for which Plaintiff was disciplined demonstrates that the alleged hostile conduct directed at Plaintiff was on the basis of his race and/or protected activity.  Pl.'s Opp'n at 10-11.  On reply, the AOC does no more than repeat – nearly verbatim – the cursory argument asserted in its opening memorandum, with the addition of an equally conclusory assertion that "the relevance of the discipline given to DiPasquale must be based on the contention that the incident involving him was of the same magnitude as the incident for which Plaintiff was disciplined" and because "[t]he incidents were quite different[,] [t]he DiPasquale evidence should be excluded."  Def.'s Reply at 8.  Lamentably, the AOC fails to even identify the relevant incidents, not to mention to explain why they were so "different."   As Plaintiff's likewise conclusory assertion in its opposition regarding the AOC's failure to discipline DiPasquale for "similar" conduct is equally unhelpful, the Court is left with no factual or legal content upon which to assess the evidence. The Court declines to sift through the voluminous record in this case to make the AOC's arguments for it when it has chosen not to specify the grounds for its challenge or attach the relevant documents to the present pleading.  Accordingly, the Court declines to make any ruling at this time regarding the admissibility of evidence regarding discipline given to Mr. DiPasquale.

For the foregoing reasons, and based on the present record, the AOC's request that the Court exclude evidence regarding Calogero DiPasquale is **DENIED**.

## 5.  Plaintiff's Request that the Court Seat a Jury of Twelve

The AOC requests that the Court seat a jury of twelve members, arguing that recent scholarly studies have shown that a jury of twelve is superior in small-group decision-making to

a jury of six, as well as resulting in a jury that better reflects the diversity of the community. Def.'s Mem. at 8-9.  Plaintiff counters that, in light of the administrative and judicial efforts involved with managing a jury of twelve, the Court should seat a jury of eight members (two of whom shall be alternates).  Pl.'s Opp'n at 11.

Preliminarily, the Court observes that a request regarding the number of jurors to be seated by the Court is not the proper subject of a motion *in limine*, the purpose of which is "to narrow the *evidentiary* issues for trial and to eliminate unnecessary trial interruptions."  *Graves v. District of Columbia*, 850 F. Supp. 2d 6, 11 (D.D.C. 2011) (citing *Bradley v. Pittsburgh Bd. Of Educ.*, 913 F.2d 1064, 1070 (3d Cir. 1990)) (emphasis added).  Furthermore, the parties have failed to explain why this case calls for management different to that of any other civil trial before this Court.  Federal Rule of Civil Procedure 48(a) provides that "[a] jury must begin with at least 6 and no more than 12 members, and each juror must participate in the verdict unless excused under Rule 47(c)."  Therefore, there are no alternate jurors.  In accordance with Rule 48(a), the Court shall seat a jury of nine members.

Accordingly, the AOC's request that the Court seat a jury of twelve members is **DENIED**.

### 6.  Acts that Allegedly Contributed to the Creation of the Hostile Work Environment Not Referred to in the Joint Pretrial Statement

Finally, the AOC raises a challenge to the following description of Plaintiff's claims, set forth in the parties' Joint Pretrial Statement:

> [Plaintiff] claims that he has been subjected to an ongoing hostile environment based on his race and prior protected activity and that the hostile environment included, *but was not limited to*: …

Def's Mem. at 9-10 (citing Pretrial Stmt. at 3 (emphasis added)).

Specifically, the AOC argues that "the time has past [*sic*] for [P]laintiff to add to the events that he contends created the hostile work environment" and requests that the Court preclude Plaintiff from presenting at trial any evidence of acts that allegedly contributed to the creation of the hostile work environment other than those specified in the present Joint Pretrial Statement. *Id.* In response, Plaintiff asserts that he has identified the relevant incidents at play in the pretrial statement, responses to discovery, and his Second Amended Complaint (and the Court shall add, in his submissions in response to the AOC's summary judgment motion). Pl.'s Opp'n at 12. Plaintiff acknowledges that he may not surprise the AOC with "significant additional claims" at trial, but also asserts, correctly, that the Pretrial Scheduling and Procedures Order issued in this case required Plaintiff to provide only "a sufficiently detailed description of the factual and legal basis for each claim to provide Defendant[] and the Court with notice of the contours of each individual claim[.]" Pl.'s Opp'n at 11-12; Order (May 31, 2012), ECF No. [54], at 2.

The Court finds the AOC's sweeping objection to potential testimony about "other unspecified acts" too speculative and imprecise to warrant an evidentiary ruling on the record before it. However, the AOC's concerns are not lost on the Court. While it is true that when it comes to claims for hostile work environment, a plaintiff is not required to plead in exhaustive detail each and every component act, he must still set forth enough factual content to provide the defendant with fair notice of his claim. *Graves*, 777 F. Supp. 2d 109, 121. Especially at this late stage in the litigation, Plaintiff should have been able to set forth with sufficient particularity in the Joint Pretrial Statement each of the component acts on which he intends to rely, so as not to ambush the AOC with testimony about previously undisclosed factual allegations at trial.

For the foregoing reasons, the AOC's broad request that the Court preclude Plaintiff from presenting at trial any evidence of acts that allegedly contributed to the creation of the hostile work environment other than those specified in the parties' Joint Pretrial Statement is **DENIED-WITHOUT-PREJUDICE.** However, in an effort to avoid unfair surprise at trial, the Court shall, at the parties' upcoming pretrial conference, based on the revised Joint Pretrial Statement to be filed by March 4, 2013, entertain specific concerns about (and discuss the Court's expectations regarding) Plaintiff's presentation of his hostile work environment claim.

**B. Plaintiff's Motion *in Limine***

Plaintiff's motion in *limine* requests that the Court preclude the AOC from offering the following four categories of testimony or other evidence: (1) "Evidence that [Plaintiff] was convicted of misdemeanor battery; (2) Evidence that the AOC's contract hearing officer upheld the two reprimands; (3) Evidence that the [AOC] Concurred with the Reprimand; (4) Evidence that [Plaintiff's] supervisors have retired from the [AOC]." Pl.'s Mot. at 1.

Because the Court has already resolved the parties' dispute regarding evidence of Plaintiff's criminal conviction, *see supra* Part II.A.1, it need not address the first category of evidence. The Court shall turn, then, to the remaining three categories.

**1. Evidence that the AOC's Contract Hearing Officer Upheld the Issuance of Two Reprimands Against Plaintiff and Evidence of the AOC's Concurrence with the Reprimands.**

The Court shall address together Plaintiff's second and third categories of challenged evidence, as they relate to the same underlying factual allegations. Among the component acts of Plaintiff's hostile work environment claim are "two unsupported reprimands." Pretrial Stmt. at 3. Regarding the first of these purportedly unsupported reprimands, Plaintiff's Second Amended Complaint alleges the following:

On January 9, 2007, Mr. Williams [Plaintiff's then supervisor] proposed to officially reprimand [Plaintiff] for 1) failing to perform assigned duties and 2) using inappropriate language in the workplace. … Subsequently, on May 10, 2007, the [AOC] – by and through Frank Tiscione (Superintendent of the House Office Buildings) – issued his concurrence of the decision to reprimand [Plaintiff].  On or about June 18, 2007, the [AOC] – by and through Stephen Ayers (the Acting Architect of the Capitol) – upheld the issuance of the Reprimand and the Letter of Reprimand was formally issued to [  ] Plaintiff.

Second Am. Compl. ¶ 21.

Regarding the second reprimand, Plaintiff alleges:

On May 1, 2010, one of [Plaintiff's] coworkers (one of the coworkers who accused him of sexual harassment) verbally assaulted him and threatened him physically because he was annoyed with the music that [Plaintiff] was playing on his personal radio. [Plaintiff] remained calm during the tirade … On May 25, 2010, Shop Supervisor Ed Williams initiated action to discipline [Plaintiff].  On information and belief, the [AOC] took no disciplinary action against the employee who had berated and threatened [Plaintiff]. … The Superintendent of the House Office Buildings concurred with the letter of reprimand against [Plaintiff].

Second Am. Compl. ¶¶ 36-37.

To respond to these allegations, the AOC intends to offer as exhibits at trial the recommendations by Mr. Williams to issue the reprimands, the concurrences by the Supervisors of the House Office Buildings, and the formal letters of reprimand that were issued by the AOC on June 15, 2007 and August 4, 2010, upon the AOC's review of a report of findings and recommendations of a hearing officer to whom the proposed reprimands were referred.  The AOC does not intend to offer the hearing officers' reports; nor does it intend to call the hearing examiners as witnesses at trial.  Def.'s Opp'n at 3-5.  Accordingly, the Court need not reach the merits of Plaintiff's request to preclude the AOC from offering into evidence the hearing officers' reports or testimony.

Plaintiff moves to exclude the AOC's letters approving Mr. Williams' proposals to reprimand and the Superintendent's concurrences.  *See* Pl.'s Mem. at 11-12; Pl.'s Reply at 4.

The first argument Plaintiff makes in support of exclusion of the AOC's approval letters is that the letters are irrelevant because "it is not the language used in the reprimand that makes the disciplinary action a part of the hostile environment" but rather "the fact that the discipline was proposed and imposed for no legitimate reason."  Pl.'s Mem. at 11-12.  The Court finds this first argument untenable and frankly, a waste of the parties' time and the Court's limited resources. Putting aside the fact that Plaintiff's Second Amended Complaint *specifically* references the AOC's decision to uphold one of the reprimands, *see* Second Am. Compl. ¶ 21 – which is in itself indicative that Plaintiff's arguments regarding relevance are not only erroneous but also disingenuous – the Court agrees with the AOC that the letters are relevant to the issue of whether the process by which the formal reprimands were issued, and the language used therein, demonstrates a hostile working environment (or the lack thereof).  *See* Def.'s Opp'n at 6-7.

Plaintiff also argues that the letters should be excluded as unfairly prejudicial pursuant to Federal Rule of Evidence 403 because the letters refer to the use of a hearing officer to examine the proposed reprimands.  Pl.'s Mem. at 9-11.  Specifically, Plaintiff argues that the fact that an independent hearing officer may have found the reprimands warranted, after Plaintiff had already received the informal reprimand letters from his direct supervisor, would mislead the jury into thinking that the reprimands were legitimate and free of retaliatory and/or discriminatory animus simply because the hearing officers upheld them.  Pl.'s Mem. at 9-11.  Plaintiff further explains that because the hearing officers conducted only a "substantial evidence" review, and the process did not permit Plaintiff to present witnesses or to challenge the credibility of those AOC officials who were responsible for discipline, the presentation of the AOC's letters referencing the use of a hearing officer would give the jury a "false impression that a thorough independent investigation and hearing resulted in a determination that the reprimands were justified and

appropriate." *Id.*; Reply at 4.  Finally, Plaintiff contends that to the extent the Court permits introduction of the AOC formal reprimand letters (or any other testimony referencing the hearing officers' decisions) at trial, Plaintiff would be compelled to "launch a mini-trial" regarding the hearing officer's review process in order to demonstrate that the hearing officer did not consider the available evidence of discrimination and retaliation. Pl.'s Mem. at 11.  In his opening brief, Plaintiff requests that in the event the Court denies his request to exclude the evidence, the Court permit him to call Marguerite Donnelly, the hearing officer.  *Id.*  Plaintiff adds a litany of additional proposed rebuttal evidence and witnesses in his reply brief, including the Architect himself and the Chief of the Employee Labor Relations Branch for the AOC.  Pl.'s Reply at 5.

For reasons already stated, the Court finds that the AOC's approval letters are of significant probative value with respect to Plaintiff's claims that the AOC's two reprimands were among the acts that contributed to the allegedly hostile work environment.  The Court also finds that any danger that the jury may misinterpret the letters' reference to hearing officer reports could easily be alleviated through the use of stipulations, reasonable inquiry on cross-examination, and/or a limiting instruction.  Because Plaintiff waited until his reply to specify the various categories of evidence that he would proffer to counter the introduction of the AOC's approval letters, the AOC has had no occasion to submit its views as to the admissibility of such evidence.

In view of the foregoing considerations, and based on the present record, the Court shall **DENY** Plaintiff's request to exclude the formal letters of reprimand that were issued by the AOC on June 15, 2007 and August 4, 2010.  The parties shall meet and confer to attempt to reach an agreement regarding the use of additional evidence, stipulations, and/or limiting instructions to mitigate the potential for any unfair prejudice that might result from the letters' reference to the

use of hearing officers.  The parties shall be prepared to discuss these matters with the Court at the upcoming pretrial conference.

      **2.   Evidence of Plaintiff's Supervisors' Retirement from the AOC**

      Lastly, Plaintiff moves for an order prohibiting the AOC from raising at trial the fact that any supervisors in Plaintiff's chain of command, including former Paint Shop Supervisor, Edwin Williams; former Assistant Superintendent, Robert Gleich; and former Superintendent, Frank Tiscione, have retired from the AOC.  Pl.'s Mem. at 13.  Plaintiff argues, in an utterly conclusory fashion, that exclusion of such evidence is warranted under Federal Rule of Evidence 401 because it is not relevant to any of Plaintiff's claims or the AOC's defenses.  *Id.*  Plaintiff also argues that the evidence should be excluded as unfairly prejudicial under Federal Rule of Evidence 403 because there exists a "significant danger" that, in a "close case," "even a reasonable juror might take incorrectly … the fact that the responsible officials' have retired into consideration when determining the [AOC's] liability and/or Plaintiff's damages," for example, by finding the AOC liable "simply because the supervisor is no longer in a position to discriminate or retaliate against employees" or by "sympathiz[ing] with the supervisor(s) due solely to the fact that they have retired."  *Id.*

      Plaintiff provides no further explication and cites no legal authority – none – in support of its request.  In the Court's view, evidence of the dates of each supervisor's tenure at the AOC provides a helpful and necessary context for the jury's understanding of the timeline of events at issue in the case.  Further, as the jury will be specifically instructed as to the elements required for a finding of liability, Plaintiff's ill-defined concerns regarding the jurors' potential reactions to the mere fact of a particular AOC official's retirement is speculative and simply unsubstantiated.

Accordingly, for the foregoing reasons, the Court shall **DENY** Plaintiff's request for an order precluding the AOC from raising at trial the fact that any supervisors in Plaintiff's chain of command have retired from the AOC.

### III.  CONCLUSION

For the foregoing reasons, the Court shall **DENY** Plaintiff's [62] Motion *in Limine* and **GRANT-IN-PART** and **DENY-IN-PART** the AOC's [65] Motion *in Limine*.

An appropriate order accompanies this Memorandum Opinion.


            _____/s/_____
            **COLLEEN KOLLAR-KOTELLY**
            United States District Judge