**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CORNELL HERBERT,

      Plaintiff,

      v.

ARCHITECT OF THE CAPITOL,

      Defendant.

Civil Action No. 09-1719 (CKK)

**ORDER**
(July 23, 2013)

Pending before the Court is Plaintiff's [95] Motion *in Limine* to Permit "Me Too" Evidence of Edward Williams' Discrimination Based on Race. For the reasons set forth below, Plaintiff's motion shall be granted.

Upon learning that Plaintiff intended to proffer as a witness at trial Shirlon Maynard ("Maynard"), the Plaster Leader in the Paint Branch of the Architect of the Capitol, Defendant objected on the grounds that Maynard was not disclosed as a potential witness during discovery. During the parties' first pretrial conference, which took place on June 18, 2013, Defendant agreed to withdraw his objection, subject to Plaintiff permitting Defendant an opportunity to depose Maynard. It is the Court's understanding that Maynard was deposed on July 10, 2013.

Plaintiff now seeks to offer at trial certain testimony of Maynard, consistent with his deposition testimony. Specifically, Plaintiff seeks to offer two categories of testimony from which a reasonable jury could conclude that Edward Williams ("Williams"), who was Plaintiff's first-line supervisor during all times relevant to the Complaint, harbored bias against black employees: (1) testimony that Williams instructed Maynard not to give any instructions to his

subordinate white employees in order to "keep the peace" in the Paint Shop; and (2) testimony that Williams only permitted Maynard to conduct interviews for subordinate employees when the candidates were black and that Williams disregarded Maynard's objections to hiring Bruce Tomaselli ("Tomaselli"), an allegedly unqualified white candidate, and did nothing to verify Tomaselli's skills as a plasterer before hiring him.

The Court shall grant Plaintiff's motion with respect to the first category because Defendant expressly concedes that such testimony is admissible.  With respect to the second category of testimony, Plaintiff argues that the evidence is probative of Williams' discriminatory animus against Plaintiff on the basis of Plaintiff's race.

It is well established that "[e]vidence of an employer's past discriminatory or retaliatory behavior toward other employees – so-called 'me too' testimony – may, depending on the circumstances, be relevant to whether an employer discriminated or retaliated against a plaintiff." *Nuskey v. Hochberg*, 723 F. Supp. 2d 229, 233 (D.D.C. 2010) (citing *Sprint v. Mendelsohn,* 552 U.S. 378, 385-88, 128 S.Ct. 1140; *Parker v. HUD,* 891 F.2d 316, 321 (D.C. Cir. 1989); *Elion v. Jackson,* 544 F. Supp. 2d 1, 8 (D.D.C. 2008)).  "Such testimony is neither *per se* admissible nor *per se* inadmissible; the question whether such testimony is relevant and sufficiently more probative than unfairly prejudicial in a particular case is 'fact-based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case.'" *Id.* (quoting *Sprint v. Mendelsohn,* 552 U.S. at 387-88, 128 S.Ct. 1140).

Among the factors relevant to the determination as to whether or not to allow the introduction of "me too" evidence in employment discrimination cases are whether the alleged discriminatory behavior by the employer is close in time to the events at issue in the case;

whether the same decision-makers were involved; whether the witness and the plaintiff were treated in a similar manner; and whether the witness and the plaintiff were otherwise similarly situated.  *Id.*; *Elion*, 544 F. Supp. 2d at 8.

Based on the foregoing factors, the Court concludes that Maynard's testimony concerning Williams' allegedly prohibiting Maynard to conduct interviews of white candidates and his testimony regarding the selection of Tomaselli is admissible "me too" evidence.  The testimony pertains to incidents demonstrating an alleged racial bias against employees by Williams – the same supervisor who is alleged in the Complaint to have caused Plaintiff to endure a hostile work environment on the basis of his race (and, although not relevant for present purposes, in retaliation for Plaintiff's earlier protected activity).  The testimony also pertains to incidents close in time to the hostile work environment about which Plaintiff complains, as Tomaselli's selection is alleged to have occurred in 2005 or 2006, and Plaintiff's hostile work environment allegations are comprised of conduct ranging from 2004 through 2011.  *See* Revised Joint Pretrial Stmt., ECF No. [80] at ¶ 2(a)-(jj).

Although Defendant conclusorily argues that Maynard's complaints about the interview process and the selection of Tomaselli are dissimilar to the conduct that Plaintiff contends created a hostile work environment, the Court disagrees.  A reasonable juror could interpret this testimony as evidence showing that Williams gave preferences to white employees and harbored discriminatory animus toward black employees.  In this regard, the cases in this District that have considered "me too" testimony of this nature are instructive.  While the victim of the alleged discriminatory conduct that is the subject of the "me too" testimony most often shares with Plaintiff membership in the same protected class, the exact conduct allegedly endured need not be identical.  *See, e.g.*, *Nuskey*, 723 F. Supp. 2d at 232 (evidence that the female plaintiff's male

supervisor made sexist remarks to another female employee and other women was admissible in action alleging termination on the basis of gender); *Howard v. District of Columbia Public Schools*, 531 F. Supp. 2d 115, 117 (D.D.C. 2008) (testimony that witness observed interview panelist complain about having his professional judgment questioned by a young African American woman was admissible in plaintiff's non-selection case to show that the same interview panelist scored plaintiff unfairly due to her race).

Finally, the Court notes that Defendant has objected to the second category of proposed testimony on the grounds that Plaintiff has not disclosed to Defendant any previous statement (prior to Maynard's July 10, 2013 deposition) that he intended to show that the Tomaselli selection evidenced racial discrimination by Williams.   While Defendant contends that permitting Plaintiff to raise this issue after the close of discovery would prejudice Defendant, Defendant has not articulated exactly how he would be prejudiced or what type of investigation into the selection of Tomaselli he would have undertaken if he had been provided the opportunity.  This given, and in view of the Court's finding today that the proposed testimony is relevant to the issue of whether or not Williams harbored discriminatory animus against Plaintiff on the basis of his race, the Court deems it most appropriate to admit the testimony and to have a discussion with the parties during the upcoming pretrial conference about the possibility of permitting Defendant to obtain limited discovery on this issue.

**SO ORDERED**.

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge

4